## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| KIMBALL HILL, INC., et al., | ) | Case No. 08 B 10095 |
| | ) | |
| _____Debtors._____ | ) | |
| KHI LIQUIDATION TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 10 A 00824 |
| v. | ) | |
| | ) | |
| WISENBAKER BUILDER SERVICES, | ) | |
| INC., and WISENBAKER BUILDER | ) | |
| SERVICES, LTD., | ) | |
| | ) | |
| Defendants. | ) | Hon. Susan Pierson Sonderby |

### MEMORANDUM OPINION

This matter comes before the court on the Amended Motion of Wisenbaker Builder Services, Inc. and Wisenbaker Builder Services, Ltd. to Dismiss Amended Adversary Complaint. For the reasons stated herein, the motion will be denied in part and granted in part. The Amended Complaint will not be dismissed for lack of standing. Count I will be dismissed for failure to state a claim. Count II will not be dismissed.

**Jurisdiction and Venue**

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Internal Operating Procedure 15 of the United States District Court for the Northern District of Illinois. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H). Venue lies in this court pursuant to 28 U.S.C. §1409.

**Background**

On April 23, 2008 (the "Petition Date"), Kimball Hill, Inc. and 29 of its affiliates (collectively, the "Debtors"), including Kimball Hill Homes Texas, Inc. ("KHH Texas"), Kimball Hill Homes Houston, L.P. ("KHH Houston"), Kimball Hill Homes Dallas, L.P. ("KHH Dallas"), Kimball Hill Homes San Antonio, L.P. ("KHH San Antonio"), and Kimball Hill Homes Austin, L.P. ("KHH Austin") filed voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code. Shortly after the Petition Date, the court entered an order providing for the joint administration of the chapter 11 cases pursuant to Fed. R. Bankr. P. 1015.

On March 12, 2009, the Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Plan") was confirmed with the entry of this court's Findings of Fact, Conclusions of Law, and Order Confirming Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Confirmation Order"). The Plan provides for, among other things, the establishment of a liquidation trust (the "Liquidation Trust") into which certain estate assets are deposited and distributed to the trust beneficiaries who are creditors of the Debtors' estates. The Final Liquidation Trust Agreement is included as Exhibit E of the Final Plan Supplement Exhibits to the Plan [docket no. 1153][1] and provides for the appointment of U.S. Bank National Association as trustee of the Liquidation Trust or, as it is called in the Trust Agreement, the Liquidation Trust Administrator. The administration of the Liquidation Trust involves the preservation, maintenance, and liquidation of the trust assets, and the prosecution of causes of action held by the Liquidation Trust.

---

[1]

All citations to the docket refer to the docket of the main bankruptcy case, 08 B 10095.

2

On April 19, 2010, the Liquidation Trust filed an adversary complaint against Wisenbaker

Builder Services, Inc. ("Wisenbaker Inc.") and Wisenbaker Builder Services, Ltd. ("Wisenbaker

Builder") (collectively, the "Defendants") asserting claims for the avoidance and recovery of certain

prepetition payments made by KHH Texas in the aggregate amount of $1,665,181 (the "Transfers")

as preferences pursuant to Sections 547 and 550 of the Bankruptcy Code, or in the alternative, as

fraudulent transfers pursuant to Sections 544(b), 548, and 550 of the Bankruptcy Code and 740 ILCS

160/5 and 160/6.[2]  The Defendants filed a motion to dismiss the complaint pursuant to Rules

12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein by Fed. R.

Civ. P. 7012(b).  Within 21 days after the motion to dismiss was filed, the Liquidation Trust,

pursuant to Fed. R. Civ. P. 15(a)(1)(B), filed an Amended Complaint.  The Defendants thereafter

amended their dismissal motion addressing their arguments to the Amended Complaint.

**Request to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

The Defendants argue that the Liquidation Trust lacks standing to assert the claims included

in the Amended Complaint because the claims were not retained by the Debtors in the Plan for

enforcement by the Liquidation Trust after confirmation.  The plaintiff bears the burden of showing

standing.  Apex Digital, Inc. v. Sears, Roebuck & Co., 572 F.3d 440, 443 (7th Cir. 2009).  The court

can consider matters outside the pleadings to resolve the standing issue.  Id. at 443-44.

The matters outside the pleadings which the parties have asked the court to consider here are

---

[2]

The trustee of a trust is the proper party to bring a lawsuit on behalf of the trust.  *See* In re Markos Gurnee
Partnership, 182 B.R. 211, 215 (Bankr. N.D. Ill. 1995); In re Schneider, 417 B.R. 907, 913 (Bankr. N.D. Ill.
2009). The Defendants have not moved to dismiss on the basis that the Liquidation Trust is not the real party
in interest. Even if they had, "[t]he court may not dismiss an action for failure to prosecute in the name of
the real party in interest until, after an objection, a reasonable time has been allowed for the real party in
interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3).

the Plan [docket no. 1075], the Confirmation Order [docket no. 1118], and Exhibit A of the Final

Plan Supplement Exhibits [docket no. 1153].   The pertinent provisions of the Plan concern the

Debtors' retention of estate claims and the transfer of the retained claims to the Liquidation Trust

for enforcement after confirmation of the Plan.   The Plan's retention provision states, in part:

> Unless a claim or Cause of Action against a creditor or other Entity is expressly
> waived, relinquished, released, compromised or settled in the Plan or any Final
> Order, the Debtors expressly reserve such claim or Cause of Action for later
> adjudication by the Liquidation Trust.

Plan, Article IV(J)(2).

The Plan's enforcement provision states, in part:

> Except as otherwise provided in the Plan, on the Effective Date, all of the Debtors'
> rights to commence and pursue, as appropriate, any and all Causes of Action, whether
> arising before or after the Petition Date, in any court or other tribunal in an adversary
> proceeding or contested matter filed in one or more of the Chapter 11 Cases,
> including the following actions and any Causes of Action specified on Exhibit A [i.e.,
> Exhibit A of the Final Plan Supplement Exhibits], will be transferred to the
> Liquidation Trust; . . . (b) any other litigation or Causes of Action, . . . including
> possible claims against the following types of parties, both domestic and foreign, for
> the following types of claims . . . (xviii) Causes of Action arising under chapter 5 of
> the Bankruptcy Code, including preferences under section 547 of the Bankruptcy
> Code [].
>
> The foregoing Causes of Action will be transferred to the Liquidation Trust []. . . .
> [T]he Liquidation Trust, through its authorized agents or representatives, will have
> and may exclusively enforce any and all such claims, rights, or Causes of Action [].

Plan, Article IV(J)(1).

"Cause of Action" is defined in the Plan as:

> Any claim, cause of action, controversy, demand, right, action, Lien, indemnity,
> guaranty, suit, obligation, liability, damage, judgment, account, defense, offset,
> power, privilege, license, and franchise of any kind or character whatsoever, known,
> unknown, contingent or non-contingent, matured or unmatured, suspected or
> unsuspected, liquidated or unliquidated, disputed or undisputed, secured or
> unsecured, assertable directly or derivatively, whether arising before, on or after the

4

Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Cause of Action also includes: . . .(c) any claim pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; . . . (e) any state law fraudulent transfer claim; . . . and (g) any claim listed in the Plan Supplement.

Plan, Article I (A)(21).

Exhibit A of the Final Plan Supplement Exhibits [docket no. 1153] is entitled "Non-Exclusive List of Retained Causes of Action."  The first page of Exhibit A consists of numerous disclaimers all in capital letters, including the following:

Article IV(J) of the Plan preserves **all** causes of action not expressly waived, relinquished, released, compromised, or settled pursuant to the Plan or a Final Order. The attached list is a nonexclusive list of entities against whom the Debtors, or the Liquidation Trust or Post-Consummation Trust, as applicable, shall retain causes of action.  Failure to include an entity on the attached list shall not constitute a release of such entity and shall not indicate that causes of action against such entity have not been retained.

. . .

For avoidance of doubt, unless expressly released pursuant to the Plan or a Final Order in their capacities as such, entities not listed on the attached list are not released and the Debtors and the Liquidation Trust or Post-Consummation Trust, as applicable, expressly retain all causes of action of any kind whatsoever against all such entities, including without limitation the categories of causes of action set forth below.

Failure to attribute any specific cause of action to a particular entity on the attached list shall not under any circumstance be interpreted to mean that such cause of action is not retained against such entity.  All possible causes of action, including causes of action not listed below, are retained against all entities not expressly released pursuant (*sic*) the Plan or a Final Order in their capacities as such.

A 477-page list of the entities against whom the Debtors have potential causes of action follows the disclaimers.  The list is in chart form and sets forth in columns the names, "notice names," addresses of the entities, and potential causes of actions attributed to those entities.  The

5

cause of action is identified by a number code corresponding with a category of claims. On page 469

of the list there are four entities with Wisenbaker in their names listed as follows:

| Non-Released Party | Notice Name | Address | City | State | Zip | Potential Causes of Action |
|---|---|---|---|---|---|---|
| Wisenbaker | Ray Fowles | 1703 Westfield | Houston | TX | 77073 | 13 |
| Wisenbaker Builder Services Inc. | Russ Bevan [] | RD | Houston | TX | 77073 | 13,16 |
| Wisenbaker Builder Services Ltd | Greg Helton | 11310 Gemini Ln | Dallas | TX | 75229 | 13 |
| Wisenbaker Builders Services Ltd | Joe Chiavone | 1703 Westfield Loop | Houston | TX | 77073 | 1,2,3,8,10,13,16,17,18 |

The number 18 is code for the category of "Causes of Action arising under chapter 5 of the

Bankruptcy Code, including preferences under section 547 of the Bankruptcy Code." (Exhibit A to

Final Plan Supplement, p. 2). Although code 18 encompasses the claims asserted in the Amended

Complaint against the Defendants, it is not in the "Potential Causes of Action" columns adjacent to

the Defendants' names in the chart. Code 18 is, however, in that column for Wisenbaker Builders

Services Ltd. ("Wisenbaker Builders") which but for the addition of "s" to the word "Builder,"

shares the same name as the Defendant Wisenbaker Builder. Wisenbaker Builders is not a named

defendant in this proceeding.

The Defendants argue that the Liquidation Trust can only pursue the claims "specifically

identified" in the Plan as being retained by the Debtors. According to the Defendants, in order to

specifically identify a claim and thereby effectively retain it, a plan retention provision must describe

the claim with more specificity than by category or type. An effective plan retention provision,

according to the Defendants, designates the theory of the cause of action brought or to be brought

against a named particular defendant. The Defendants contend that the categorical description of

avoidance claims with no reference to the names of the entities against whom the Debtors hold the

claims in Article IV(J)(2) of the Plan is not a specific identification and it was therefore ineffective

to retain the claims asserted in the Amended Complaint against them. The Defendants further

6

contend that the claims asserted against them were not retained because of the failure to include the appropriate cause of action code adjacent to their names in the chart set out in Exhibit A of the Final Plan Supplement.

In summary, according to the Defendants, because the categorical description in Article IV of the Plan was ineffective due to lack of specificity and the chart in the Plan Supplement was ineffective for failure to include the correct cause of action code, the claims asserted in the Amended Complaint were not retained by the Debtors and therefore were not among those claims the Debtors transferred to the Liquidation Trust for enforcement. Consequently, the Liquidation Trust has no standing to assert the claims in the Amended Complaint and the same should be dismissed for that reason.

The Defendants' argument is premised on section 1123 of the Bankruptcy Code, which sets out mandatory and discretionary contents of a plan. Subsection (b)(3)(B) of section 1123 allows the plan to provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any . . . claim or interest" belonging to the debtor or the estate. 11 U.S.C. § 1123(b)(3)(B).

Citing to section 1123(b)(3)(B), the Seventh Circuit Court of Appeals has stated that "the debtor must specifically identify in its reorganization plan the claims it wishes to pursue postconfirmation." P.A. Bergner & Co. v. Bank One, Milwaukee, N.A. (In re P.A. Bergner & Co.), 140 F.3d 1111, 1117 (7th Cir. 1998). The question is what description of the claim in the plan constitutes a "specific identification."

Some courts have held that in order to specifically identify a retained claim, the plan retention provision must consist of "specific and unequivocal" language. *See* In re MPF Holdings U.S., LLC,

7

443 B.R. 736, 740-45 (Bankr. S.D. Tex. 2011)(collecting cases). To meet the "specific and unequivocal" linguistic standard, the debtor has to at least describe the factual basis of the retained claim and give the name of the putative defendant. *See* Browning v. Levy, 283 F.3d 761, 774 (6th Cir. 2002)(the Sixth Circuit held that a categorical description of retained claims was a "blanket reservation . . . of little value" and noted "[s]ignificantly, [the retention provision] neither names [the defendant] nor states the factual basis for the reserved claims"); MPF Holdings, 443 B.R. at 747 (court concluded that "a proper reservation provision in any plan must expressly state: (1) the name of the putative defendant, (2) the basis on which the defendant will be sued; and (3) that the suit will definitely be filed following confirmation.").

The Seventh Circuit in Bergner rejected the argument that section 1123(b)(3)(B)'s requirement to specifically identify a retained claim means the claim must be "specifically and unequivocally" described. Bergner, 140 F.3d at 1117. As noted by the Court, the language of section 1123(b)(3)(B) does not require "specific and unequivocal" language to retain claims belonging to the estate. Id. Even so, the Seventh Circuit observed that "[t]he courts that have spoken of the need for 'specific' and 'unequivocal' language have focused on the requirement that plans unequivocally retain claims of a given type [*i.e.,* a categorical description of claims], not on any rule that individual claims must be listed specifically." Bergner, 140 F.3d at 1117 (*citations omitted*); *see e.g.*, In re Associated Vintage Group, Inc., 283 B.R. 549, 564 (9th Cir. BAP 2002)(bankruptcy appellate panel held that a description of claims by category or type, that omits the recovery theories and/or the names of the potential defendants, is sufficiently "specific and unequivocal").

Although the Seventh Circuit did not definitively announce what language, other than

8

"specific and unequivocal" would satisfy a "specific identification" standard  for effective section

1123(b)(3) retention provisions, the holding of the case is instructive.  In <u>Bergner</u>, the Court

considered a retention provision with a categorical description of claims:

> Effective as of the date of the approval of the Disclosure Statement by the
> Bankruptcy Court, the Debtors waive the right to prosecute and release any avoidance
> or recovery actions under sections 544, 545, 547, 548, 549, 550, 551, and 553 of the
> Bankruptcy Code or any other causes of action, or rights to payments of claims, that
> belong to the Debtors or the Debtors in Possession, other than any such actions that
> may be pending on such date.

<u>Bergner</u>, 140 F.3d at 1117.  The Court held that the categorically-described avoidance or recovery

claims that were not being released were retained for future prosecution.  Therefore, the plaintiff had

standing to assert them.  *See* <u>Id.</u>  Accordingly, although the Court did not pronounce the exact

parameters of an effective retention provision, it can be said from the result of <u>Bergner</u> that

categorical descriptions suffice.

The Defendants here, however, focus on the Seventh Circuit's discussion of the fact that the

cause of action involved in <u>Bergner</u> was the subject of a lawsuit pending at the time the plan was

confirmed.  The Defendants argue that the <u>Bergner</u> decision should be read to provide that a

categorical description of claims subject to litigation when the plan is confirmed is effective, but a

more specific description is needed to effectively retain those claims that will be asserted in a lawsuit

filed after confirmation.  This court disagrees with that interpretation of <u>Bergner</u>.

The Court noted that there might be "some logic" in requiring more exacting specificity for

"claims belonging to the estate that have never been raised."  <u>Id.</u>  Despite that quantum of logic,

however, the Court refused to read into section 1123(b)(3)(B) a requirement that in order to retain

claims not subject to existing litigation at the time of plan confirmation, the debtor has to describe

9

them with more specificity than claims then subject to litigation. Certainly no distinction based on the litigation status of the retained claim exists in section 1123(b)(3)(B). There is therefore no requirement that the plan's language make the distinction, although the debtor is free to do so.

This court has previously noted the Court's emphasis on the plan's language:

> Importantly, in Bergner, although there was some emphasis placed on the fact that the subject lawsuit was pending and being actively litigated prior to plan confirmation, the Seventh Circuit concluded that "[t]he language of [the] plan **itself** provided all the notice to which [the defendant] was entitled under the statute to preserve the ongoing proceeding between the parties." Id. (emphasis supplied).

In re Kmart Corp., 310 B.R. 107, 124 (Bankr. N.D. Ill. 2004). As an example of a plan providing "all the language" necessary to preserve the claim, the Court cited to In re Acequia, Inc., 34 F.3d 800, 807-08 (9th Cir. 1994). Bergner, 140 F.3d at 1118. The plan provision at issue in Acequia was decidedly broad: "after confirmation, the corporation would continue to 'litigate claims and causes of action which exist in favor of the Debtor arising prior to and subsequent to the commencement of the Debtor's Chapter 11 case." Acequia, 34 F.3d at 808. That language broadly describes the retained claims regardless of their litigation status.

Notably, many courts' willingness to accept categorical descriptions of claims against yet to be identified defendants is informed by the practical observation that categorical descriptions avoid the need to delay confirmation until all claims are identified with exacting specificity. *See* In re Amarex, Inc., 74 B.R. 378, 380 (Bankr. W.D. Okla. 1987)("§ 1123(b)(3)(B) serves the useful function of allowing confirmation of a plan before possible claims against others have been fully investigated and pursued. To say confirmation must await a final decision of all possible preference complaints would either inordinately delay confirmation, with all the attendant expense, or result in

10

a windfall in favor of those who received preferential transfers."); In re Ampace Corp., 279 B.R. 146,

159 (Bankr. D. Del. 2002)(court in noting that requiring exacting specificity is unreasonable and

impractical observed, "[i]ndeed, in large chapter 11 cases, the investigation and litigation of all

possible avoidance actions to final judgment can take years.  To force the debtor to remain in

bankruptcy until a final determination of all possible preference actions is made would act as a

detriment to both the debtor and its creditors by slowing down the reorganization process."); In re

USN Communications, Inc., 280 B.R. 573, 591, n. 26 (Bankr. D. Del. 2002)(court observed that in

many large chapter 11 cases there may be hundreds, if not thousands, of transactions within the 90-

day period prior to the petition and considerable time and effort is needed to examine those

transactions in light of the numerous defenses provided for in § 547(c)); Associated Vintage, 283

B.R. at 564 (bankruptcy appellate panel after noting that there is a "danger of engrafting an unduly

burdensome specificity requirement onto § 1123(b)(3)," agreed "with the other courts that regard it

as impractical and unnecessary to expect that a disclosure statement and plan must list each and

every possible defendant and each and every possible theory."); In re Worldwide Direct, Inc., 280

B.R. 819, 823 (Bankr. D. Del. 2002)(in deciding whether the debtor's rights to assert certain

defenses to claims were sufficiently reserved, the court concluded that ". . . it is simply impractical

and unwarranted to require a debtor to provide in excruciating detail all of the possible defenses or

objections which the estate may have to every single claim being treated in the plan."); In re Weidel,

208 B.R. 848, 853 (Bankr. M.D.N.C. 1997)("[T]he confirmation process is expedited by allowing

a general reservation of rights to serve as notice to creditors that their claims may be challenged. .

. . [A] general reservation of a right to contest claims puts all parties on notice that a creditor's claim

may be challenged.  The time between the filing of a case and confirmation will be shortened by

11

giving effect to general reservations of rights. Creditors may vote and object with this provision in mind. If the creditor finds the provision objectionable, it may object and force the issue regarding its claim.").

To hold off confirmation until claims are specifically identified by theory and name is contrary to the view of section 1123(b)(3)(B), which this court holds. Moreover, the exacting specificity of a line by line description urged by the Defendants is to some extent fraught with traps with unintended and detrimental consequences to the estate. If the description proves inaccurate in any respect, a defendant would argue, as the Defendants do here, that the estate's creditors have consequently lost the ability to recover on the claim. This result is at odds with the bankruptcy goals of maximizing the estate and efficient administration.

Finally, the Defendants, arguing for a more specific description than by category of claim, reference another Seventh Circuit opinion, D & K Properties Crystal Lake v. Mutual Life Ins. Co. of New York, 112 F.3d 257 (7th Cir. 1997), that arguably considers categorical descriptions to be ineffective. Such a holding would be contradictory to Bergner.

The D & K Properties case concerned *res judicata*, which is a different doctrine than the standing issue in Bergner. Despite the different doctrines, the analyses in both cases involved deciding whether the language in the plan accomplished the goal of retaining claims for future prosecution after the entry of a final confirmation order.

As noted, section 1123(b)(3)(B) contemplates plan provisions designed to retain claims for future prosecution after confirmation of the plan. Similarly, the doctrine of *res judicata* includes the concept of a retention provision, which reserves claims for future prosecution designed to protect them from the preclusive effect of a final order. *See* 18 Charles A. Wright, Arthur R. Miller &

Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4413 (West 2010); Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc., 296 F.3d 624, 629 (7th Cir. 2002)(*citing* Restatement (Second) of Judgments § 26(b)(1)(1982)).  A *res judicata* retention provision can be by agreement of the parties or by court order.  Restatement (Second) of Judgments § 26(b)(1)(2010).

According to the Seventh Circuit, in order to avoid the *res judicata* bar of a final plan confirmation order, a claim must be "expressly" retained.  D & K Properties, 112 F.3d at 261.  The retention must be express in two senses, *i.e.*, it must be in writing and it must "specifically identify" the cause of action retained.  Id.  As previously discussed, the question in Bergner was whether the subject language "specifically identified" the retained claim as required by § 1123(b)(3)(B).  Similarly, the question in D & K Properties was whether the written language of the subject plan constituted a "specific identification" for purposes of an express retention of the claim from the *res judicata* effect of the confirmation order.  The Court observed that "[a] blanket reservation that seeks to reserve all causes of action reserves nothing."  Id.

In this regard, the plan provision in D & K Properties did not use the word "reserve" or its synonym.  The provision merely identified the person responsible for enforcing claims after confirmation, with no complementary provision describing those claims in any terms.  Notably, in reaching its decision, the Court compared the plan in D & K Properties with the plan in the Envirodyne case. Id. (*citing* In re Envirodyne Industries, Inc., 174 B.R. 986 (Bankr. N.D. Ill. 1994)). The Court noted that "even a casual reading of the reservation at issue [in Envirodyne] reveals that the right to preclude claims is both express and specific, *even if broadly so*, including claims "without limitation" and "of any kind whatsoever not otherwise released pursuant to the terms of the

13

Plan. The reservation in <u>D & K Properties</u> lacks the specificity, *even if broadly stated*, of that in

*Envirodyne*. The *Envirodyne* reservation, broad as it was, was clear in what it purported to reserve."

<u>Id.</u> (emphasis added). In other words, even though broadly stated, a retention provision with a

categorical description is a specific identification, and, because it is also in writing, is express. The

reserved claim is therefore shielded from the preclusive effect of the plan confirmation order.

A careful reading of <u>D & K Properties</u> thus reveals that it is in sync with the Seventh

Circuit's later holding in <u>Bergner</u> that the categorical description in a retention provision is a

"specific identification" required by section 1123(b)(3)(B), and is therefore effectively retained for

standing purposes. Nonetheless, many defendants in postconfirmation litigation seize on the quote

in <u>D & K Properties</u> that "[a] blanket reservation that seeks to reserve all causes of action reserves

nothing," to show that the Seventh Circuit does indeed reject the efficacy of a categorical description

in a retention provision. Again, as explained by this court in <u>Kmart</u>, <u>D & K Properties</u> can be

harmonized with <u>Bergner</u>:

> . . . reading <u>Bergner</u> and <u>D & K Properties</u> together, certain conclusions can be
> reached with respect to the requisites of a valid retention provision. First, and most
> obviously, there must be a reservation of something. Plans with no retention
> provisions at all will not suffice to protect the claim from the binding effect of the
> plan. *See* <u>Paramount Plastics</u>, 172 B.R. at 335 (plan at issue contained "no reference
> to preference actions, either in the description of creditor treatment, the means for
> implementing the plan, the liquidation analysis, or the retention of jurisdiction").
> Attempts to manufacture an 1123(b)(3) reservation by resorting to other plan
> provisions, such as those relating to reservation of jurisdiction or appointment of
> estate representative, are vulnerable to failure. *See* <u>D & K Properties</u> (where debtor
> unsuccessfully argued that appointment of disbursing agent to assert claims
> constituted express reservation).
>
> Second, a blanket or general provision, i.e., one that does not clearly evince
> the debtor's intent to reserve claims, will not suffice to defeat the preclusive effect
> of the confirmation order. <u>Bergner</u> stands for the proposition that plan provisions
> identifying causes of action by type or category are not mere blanket reservations.

14

Therefore, categorical reservation can effectively avoid the *res judicata* bar. Dispensing with a requirement of cataloging claims by name comports with the Court's view in <u>Bergner</u> that section 1123(b)(3) does not require "specific and unequivocal" identification.

<u>Kmart</u>, 310 B.R. at 124.

Here, the retention provision in the Plan is quite broad, but it is clear in what it reserves. It reserves all causes of action not expressly waived, relinquished, compromised or settled in the Plan or Confirmation Order and "causes of action" are defined as, among other claims, any claim pursuant to sections 544 through 550 of the Bankruptcy Code and any claim listed in the Final Plan Supplement. The Plan's categorical retention provision constitutes the "specific identification" required by section 1123(b)(3) as interpreted by the Seventh Circuit in <u>Bergner</u>. Therefore, the claims asserted in the Amended Complaint which fall into that category were successfully retained and were clearly transferred to the Liquidation Trust for enforcement.

Finally, the Defendants point to the failure of the Debtors to include the applicable cause of action category code in Exhibit A to the Final Plan Supplement adjacent to their names. They urge that the omission of code no. 18 in the "potential causes of action" column next to their names in the chart means that the claims asserted in the Amended Complaint against them were not retained. This argument illustrates the danger of exacting specificity that the court previously discussed. Had the chart been the only unqualified reservation of claims in the entire Plan, perhaps the argument may have been persuasive. The disclaimers in Exhibit A of the Final Plan Supplement, however, unambiguously provide that the contents of the chart are not controlling. The claims listed in the chart as well as those reserved at Article IV(J) were retained. Clearly, if there is an omission of the proper code in the chart, the categorical description in the Article IV(J) retention provision covers

that omission and constitutes the effective retention of claims that did not, for whatever reason, make it to the "potential causes of action" column. Moreover, the Plan expressly provides that the Plan controls to the extent there is a conflict between it and the Plan Supplement.  Plan, Article XV(N).

Based on the foregoing, the court concludes that the claims asserted against the Defendants in the Amended Complaint were effectively retained by the Debtors in the Plan for enforcement by the Liquidation Trust.  Because those claims were placed with the Liquidation Trust for enforcement, it has standing to pursue them, albeit probably through its trustee.  Therefore, the request to dismiss for lack of standing is denied.

**Request to Dismiss Count I Pursuant to Fed. R. Civ. P. 12(b)(6)**
**for Failure to State a Claim Pursuant to Rule 8(a)**

The court now turns to the Defendants' defense that the Liquidation Trust fails to state a preference avoidance claim pursuant to Rule 8(a) with respect to some of the Transfers.  Rule 8(a) requires a complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In order to demonstrate entitlement to relief, the complaint's "short plain statement" must satisfy "two easy-to-clear hurdles."  E.E.O.C. v. Concentra Health Serv., Inc., 496 F.3d 773, 776 (7th Cir. 2007).  "First, the complaint must describe the claim in sufficient detail to give defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007)).  "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court."  Id.  In order to "enter the realm of plausible liability," the allegations must cross two lines - the line "between the conclusory and the factual" and the line "between the factually neutral and the factually suggestive."  Bell

16

Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1966 n. 5, 167 L.Ed.2d 929 (2007)). It

may be that the complaint comes close to stating a claim but needs "factual enhancement" to cross

"the line between possibility and plausibility of entitlement to relief." *See* Id. at 1966.

In considering a Rule 12(b)(6) motion, the well-plead allegations of the complaint are

accepted as true and the complaint is construed in the light most favorable to the plaintiff. Tamayo

v. Blagojevich, 526 F.3d 1074, 1081 (7th Cir. 2008). If a plaintiff pleads detailed factual allegations

that are inconsistent with the legal conclusions in the complaint, he may have plead himself out of

court. Id. at 1085.

In deciding whether the pleader has made allegations plausibly suggesting a right to relief,

the court considers the context of the complaint, *i.e.*, the type of case. Id. at 1083. Determining

whether a claim for relief is plausible is a "context-specific task" requiring the court "to draw on

its judicial experience and common sense." Ashcroft v. Iqbal, - - - U.S. - - -, 129 S.Ct. 1937, 1950,

173 L.Ed.2d 868 (2009). "In each context, we must determine what allegations are necessary to

show that recovery is 'plausible.'" Tamayo, 526 F.3d at 1083 (*citing* Limestone Dev. Corp. v. Vill.

of Lemont Ill., 520 F.3d 797, 803-04 (7th Cir. 2008)). This determination necessarily involves the

court considering the elements of the claim, although the pleader's mere parroting of the elements

will not suffice. *See* Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)("[I]n considering the

plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the

elements of a cause of action or conclusory legal statements.").

The context of Count I of the Amended Complaint is the avoidance of preferential transfers

under Bankruptcy Code section 547. The Seventh Circuit instructs that section 547:

provides that a trustee may avoid any transfer of an interest in property of the debtor

17

if the transfer meets five requirements. The transfer must be: (1) to or for the benefit of the creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; and (4) made within 90 days before the date of filing the petition. The fifth requirement, 11 U.S.C. § 547(b)(5), limits the scope of a trustee's ability to recoup transfers to those which:

enable[] such creditor to receive more than such creditor would receive if -

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Section 547(b)(5) provides that a trustee may avoid any payment by the debtor that conferred upon the recipient a benefit greater than a similarly situated creditor would have received in a hypothetical chapter 7 liquidation executed on the date of the bankruptcy petition. In other words, when the trustee brings a § 547(b) preference suit, the court is required to determine what each creditor would have received if the estate was liquidated and distributed to the creditors as provided in chapter 7 on the date that the bankruptcy petition was filed, and whether the creditor in question received more than his fair share.

In re Superior Toy & Mfg. Co., Inc., 78 F.3d 1169, 1171 (7th Cir. 1996) (internal citations omitted); see also In re Energy Co-op. Inc., 832 F.2d 997, 999 (7th Cir. 1987) ("The Bankruptcy Code's avoidable preference provision, 11 U.S.C. § 547(b), allows a bankruptcy trustee to recover certain transfers a debtor made before he filed a petition in bankruptcy"); Freeland v. Enodis Corp., 540 F.3d 721, 737 (7th Cir. 2008).

Of particular concern here is the requirement that in order to be avoided, the subject transfer must have been made for or on account of an antecedent debt owed by the debtor before such transfer was made. "An antecedent debt exists when a creditor has a claim against the debtor, even if the claim is unliquidated, unfixed, or contingent." Warsco v. Preferred Technical Group, 258 F.3d 557,

569 (7th Cir. 2001). The allegations of a preference avoidance complaint therefore must plausibly

suggest, among other things, that an antecedent debt was owed by the debtor. The terms "owed by

the debtor" were explained by Judge Gonzalez in the Enron case:

> Only those transfers on account of an antecedent debt owed by the debtor are subject
> to avoidance under section 547(b); transfers on account of an antecedent debt owed
> by a third-party are not. Under this interpretation, the word "owed" is the verb form
> of the concept "liability for payment" and is coterminous with the noun "debt."
> Thus, for example, a payment by the debtor of an affiliated entity's debt would not
> be a preference unless the debtor was in some fashion liable for that debt, as would
> be the case where the debtor guaranteed the affiliate's debt in case of default. In all
> other cases, the transfer would not be a preference though, it would likely be a
> fraudulent conveyance.

The Official Committee of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.), 357

B.R. 32, 48 (Bankr. S.D.N.Y. 2006) (citations omitted).

The Liquidation Trust alleges in the Amended Complaint that within the 90-day period prior

to the Petition Date, KHH Texas made fifty-three payments by check totaling $1,665,181. The

specific check amounts, numbers, issuance dates, and honor dates are included in a chart at

paragraph 8 of the Amended Complaint. The checks were made payable by different business

divisions of the Debtors, which seemingly contradicts the allegation that KHH Texas made the

payments. In any event, the checks were made payable to either Wisenbaker Builder or Wisenbaker

Builders (who, as noted earlier, is not a named defendant) at the same Houston address.[3]

---

[3]

The Liquidation Trust states in its response to the dismissal motion that it does not believe that Wisenbaker
Builders is a separate and distinct entity, so there was no reason to name it as a defendant. There is no
allegation to that effect in the Amended Complaint, however, and the court's review is limited to the contents
of the Amended Complaint, which allege that certain checks were payable to Wisenbaker Builder and others
to Wisenbaker Builders. It is not unheard of for corporate affiliates to have closely related names, even
though the reason for it may be puzzling. See Joseph v. Elan Motorsports Technologies Racing Corp., 2011
WL 855852, *1 (7th Cir. Mar. 14, 2011). Indeed, the two named Defendants here share nearly identical
names: Wisenbaker Builder Services, Inc. and Wisenbaker Builder Services, Ltd.. The Liquidation Trust
alleges on information and belief that Wisenbaker Inc. is the successor by merger to Wisenbaker Builder.

The Liquidation Trust alleges in conclusory fashion at paragraph 25 of the Amended Complaint that the Transfers were made on account of antecedent debts owed by KHH Texas. Detailed factual allegations in the background section of the Amended Complaint appear to contradict that conclusory allegation, however. At paragraphs 11 and 13, the Liquidation Trust alleges that each of the Transfers paid for goods and/or services that the Defendants provided [not to KHH Texas but] to KHH Houston, KHH Dallas, KHH San Antonio, or KHH Austin before the Transfers were made and that the Defendants contracted with and invoiced KHH Houston, KHH Dallas, KHH San Antonio, and KHH Austin. KHH Texas issued "certain" work orders to the Defendants for the goods and/or services that were provided to KHH Houston, KHH Dallas, KHH San Antonio, and KHH Austin.

Based on the allegations of the Amended Complaint, the Liquidation Trust has not stated a plausible claim for avoidance of the Transfers as preferences. The allegation that "certain work orders" were issued by KHH Texas does not plausibly suggest that KHH Texas incurred liability to either of the Defendants for the work those Defendants performed for KHH Houston, KHH Dallas, KHH San Antonio, and KHH Austin. Without more detail, the mere fact that KHH Texas issued the work order is factually neutral and the Liquidation Trust offers no Texas case law directly on point to the contrary. In short, the current allegations are not suggestive of an antecedent debt owed by KHH Texas, which is needed to adequately allege a claim to avoid the Transfers as preferences.

---

So, even though they have nearly identical names, the two named Defendants at one point were allegedly two separate entities.

In addition, the Defendants ask the court to dismiss the claims for avoidance of the Transfers that were made to the non-Defendant Wisenbaker Builders. As noted, the Liquidation Trust believes that Wisenbaker Builder and Wisenbaker Builders are not separate entities. Assuming *arguendo* that they are separate entities (and now that the Defendants have responded that fact appears to be true), the Liquidation Trust points out that there are allegations that the Transfers to Wisenbaker Builders were made for the benefit of the Defendants. Therefore, according to the Liquidation Trust, the preference avoidance claims are still plausible despite Wisenbaker Builders not being a defendant. The allegation that the Transfers to Wisenbaker Builders benefitted the Defendants is conclusory, however. Some more factual enhancement is needed to plausibly suggest that the Defendants were benefitted by the Transfers made to Wisenbaker Builders.

For these reasons, the court cannot say that a right to relief for avoidance of the Transfers as preferences is plausibly suggested. Count I is dismissed.

**Request to Dismiss Count II Pursuant to Fed. R. Civ. P. 12(b)(6)**
**for Failure to State a Claim Pursuant to Rule 9(b)**

The Defendants argue that the claim to avoid the Transfers as constructively fraudulent asserted in Count II should be dismissed because the circumstances constituting the alleged fraud are not plead with particularity as required by Rule 9(b). Rule 9(b)'s heightened pleading standard applies to complaints alleging constructive fraud. General Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1079 (7th Cir. 1997).

The circumstances of fraud required to be plead with particularity by Rule 9(b) include the "who, what, when, where, and how" of the fraud. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990). In the constructive fraud context, "the complaint must allege what (or how much) was

21

transferred, when the transfer was made, how it was made, who made it, who received it, and under what circumstances." In re Life Fund 5.1 LLC, 2010 WL 2650024, *3 (Bankr. N.D. Ill. Jun. 30, 2010).

The elements of a claim to avoid a constructively fraudulent transfer include: "(1) the debtor made voluntary transfers; (2) at the time of the transfers, the debtor had incurred obligations elsewhere; (3) the debtor made the transfers without receiving a reasonably equivalent value in exchange for the transfers; and (4) after the transfers, the debtor failed to retain sufficient property to pay their indebtedness." In re Gluth Bros. Const., Inc., 424 B.R. 368, 376 (Bankr. N.D. Ill. 2009).

Here, the who, what, when, where, and how of the Transfers (primarily set out in the chart at paragraph 8 of the Amended Complaint) has been sufficiently alleged, although Count II suffers from the same Wisenbaker Builder/Wisenbaker Builders issue.

The circumstances under which the Transfers were made from which the court can reasonably infer their constructively fraudulent nature is likewise alleged. The Liquidation Trust alleges that at the times that each of the Transfers were made, KHH Texas's assets at fair value were insufficient to satisfy its guarantee obligations under an Amended Credit Agreement entered into between KHI and Harris N.A., as agent for itself and other prepetition lenders (the "Prepetition Lenders"), which was guaranteed by all Debtors, including KHH Texas. KHH Texas granted Harris liens on, among other things, substantially all of its real property, building material, and cash deposits to secure its obligations under the guaranty. As of August 10, 2007, approximately $333 million was owed to the Prepetition Lenders. Under the Plan, the Prepetition Lenders' deficiency claim represents sixty-four percent of the unsecured creditor class of claimants. The allegations also suggest that KHH Texas made the Transfers to pay for work performed by the Defendants for other

Debtors without KHH Texas receiving reasonably equivalent value in exchange.

In summary, the allegations plausibly suggest with sufficient particularity that the Transfers can be avoided as being constructively fraudulent. Count II will not be dismissed for failure to state a claim under Rule 9(b). As with Count I, however, the pleading of Count II might benefit from an amendment to address the Wisenbaker Builder/Wisenbaker Builders issue.

**The Liquidation Trust's Request for Leave to Amend**

The Liquidation Trust has asked for leave to amend the Amended Complaint. Leave to amend should be freely given when justice requires. Fed. R. Civ. P. 15(a)(2), made applicable herein by Fed. R. Bank. P. 7015. The court can deny leave, however, if there is undue delay, bad faith, dilatory motive, undue prejudice, repeated failure to cure deficiencies by amendments previously allowed, or futility of amendment. Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc., 125 F.3d 468, 480 (7th Cir.1997).

The Defendants do not argue and there does not appear to be any undue delay, bad faith, dilatory motive, or undue prejudice and there has been only one previous amendment to the original complaint and that amendment was a matter of course. See Fed. R. Civ. P. 15(a)(1)(B). In addition, an amendment does not appear to be futile. The court believes that justice requires an amendment given that this adversary proceeding is at the pleading stage and it is one of more than 500 adversary proceedings brought by the Liquidation Trust to avoid transfers made by the various Debtors. The court will thus exercise its discretion to give leave to file a Second Amended Complaint to address the concerns raised with respect to the plausibility of the claim asserted in Count I, and to provide

more clarity, which may require naming Wisenbaker Builders as a defendant.[4]

## Conclusion

For the reasons stated herein, the motion will be denied in part and granted in part. The Amended Complaint will not dismissed for lack of standing. Count I will be dismissed for failure to state a claim. Count II will not be dismissed. Plaintiff is given leave to file a Second Amended Complaint on or before June 30, 2011, and the Defendants will have until July 21, 2011, to respond to the Second Amended Complaint.

Date:   JUN 0 2 2011                ENTERED:

SUSAN PIERSON SONDERBY
United States Bankruptcy Judge

---

[4] The potential that an amendment that adds Wisenbaker Builders as a defendant will not relate back to the original complaint is not a factor in deciding whether to give leave to amend. Elan Motorsports, 2011 WL 855852 at *2. If and when relation back becomes an issue, "[t]he only two inquiries that the [] court is now permitted to make in deciding whether an amended complaint relates back to the date of the original one are, first, whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant; and second, whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." Id. (citing Krupski v. Costa Crociere S.p.A., - - - U.S. - - -, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010)).

24