UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Case No. 08-bk-26779 |
| | ) | (Jointly Administered) |
| Kimball Hill, Inc., *et al.*, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | Judge Timothy A. Barnes |
| | ) | |
| KHI Liquidation Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary No. 10-ap-00824 |
| v. | ) | |
| | ) | |
| Wisenbaker Builder Services, Inc. and | ) | |
| Wisenbaker Builder Services Ltd., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

The matter before the court is the Motion To Dismiss the Second Amended Adversary Complaint To Avoid and Recover Avoidable Transfers and Disallow Claims (the "Motion To Dismiss") [Docket No. 51] of Wisenbaker Builder Services Ltd. and Wisenbaker Builder Services, Inc. (collectively "Wisenbaker" or "Defendants").

JURISDICTION

Jurisdiction and authority are central issues in this proceeding and are considered and discussed at length below. Putting aside the specific challenge, in general, the federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in, or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a) ("IOP 15(a)").

1

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code, or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). A motion to avoid a preferential transfer under section 547 of the Bankruptcy Code arises in a case under title 11 and is specified as a core proceeding. 28 U.S.C. § 157(b)(2)(F); *Direct Response Media, Inc. v. Seaport Capital, LLC (In re Direct Response Media, Inc.)*, 466 B.R. 626, 646 (Bankr. D. Del. 2012). A motion to avoid and recover a fraudulent conveyance under sections 544(b), 548, and 550 of the Bankruptcy Code arises in a case under title 11 and is also specified as a core proceeding. 28 U.S.C. § 157(b)(2)(H); *DBSI, Inc. v. Swenson (In re DBSI, Inc.)*, 466 B.R. 664, 665–66 (Bankr. D. Del. 2012).

Accordingly, at this point, the court would conclude that final judgment is within the scope of this court's authority. Given the nature of the Motion, however, the court will reserve judgment on this issue until having considered and discussed the parties' arguments.

## THE MATTERS BEFORE THE COURT

In considering the Motion, the court has considered the transcript of the arguments of the parties at the November 9, 2011 hearing (the "Hearing"),[1] and has reviewed and considered the Motion itself, any exhibits submitted in conjunction therewith, as well as:

(1) The Complaint To Avoid and Recover Avoidable Transfers and Disallow Claims (the "Original Complaint") [Docket No. 1];

(2) The Amended Complaint To Avoid and Recover Avoidable Transfers and Disallow Claims (the "First Amended Complaint") [Docket No. 20];

(3) The court's Memorandum Opinion dated June 2, 2012 (the "Original Memorandum Opinion") [Docket No. 47];

(4) The Second Amended Complaint to Avoid and Recover Avoidable Transfers and Disallow Claims (the "Second Amended Complaint") [Docket No. 50];

(5) KHI Liquidation Trust's Response in Opposition to Motion by Defendants Wisenbaker Builder Services, Inc. and Wisenbaker Builder Service Ltd. To Dismiss the Second Amended Adversary Complaint To Avoid and Recover Avoidance Transfers and Disallow Claims (the "Response") [Docket No. 57];

(6) Defendants' Reply to KHI Liquidation Trust's Response in Opposition to Motion by Defendants Wisenbaker Builder Services, Inc. and Wisenbaker Builder Service Ltd. To Dismiss the Second Amended Adversary Complaint To Avoid and Recover Avoidable Transfers and Disallow Claims (the "Reply") [Docket No. 58];

(7) KHI Liquidation Trust's Statement of Supplemental Authority in Opposition to Defendants' Motion To Dismiss [Docket No. 64];

---

[1] All of the procedural history of this matter took place before this judge's predecessor, the Hon. Susan P. Sonderby (ret.).

(8) Defendants' Submission of Supplemental Authority [Docket No. 67]; and

(9) KHI Liquidation Trust's Response to Defendants' Submission of Supplemental Authority [Docket No. 69].

Though the foregoing items together do not constitute an exhaustive list of the filings in the above-captioned adversary proceeding, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, No. 93C188, 1993 WL 69146 at *2 (N.D. Ill. March 8, 1993), *In re Fin. Partners*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989) (Sonderby, J.) (authorizing a bankruptcy court to take judicial notice of its own docket).

## PROCEDURAL HISTORY

While the court finds that the question before it should be and is determinable as a matter of law, not fact, the court believes a further consideration of the procedural history underlying this matter is appropriate. In the course of that consideration, the court has noted the following:

(1) On April 23, 2008 (the "Petition Date"), Kimball Hill, Inc. and 29 of its affiliates (collectively, the "Debtors") filed voluntary petitions for bankruptcy relief.

(2) Shortly after the Petition Date, the court entered an order providing for the joint administration of all of the cases pursuant to Federal Rule of Bankruptcy Procedure 1015.

(3) During the course of the above-captioned, jointly-administered bankruptcy cases, Wisenbaker filed proofs of claim in six of the individual cases, those of Kimball Hill Homes Austin, L.P., Kimball Hill Homes Dallas, L.P., Kimball Hill Homes Houston, L.P., Kimball Hill Homes San Antonio, L.P. and Kimball Hill, Inc. (the "Wisenbaker Debtors").

(4) On March 12, 2009, the court confirmed the Joint Plan of Kimball Hill, Inc. and its Debtor Subsidiaries (the "Joint Plan"). The Joint Plan created a liquidation trust (the "Liquidation Trust") into which certain estate assets, claims, and rights – including those of the Wisenbaker Debtors – were transferred. The Joint Plan also reserved the causes of action owned by any of the affiliates – again, including those of the Wisenbaker Debtors – for adjudication by the Liquidation Trust. While the Joint Plan did not expressly substantively consolidate the cases of the Debtors, as discussed below, it nonetheless had that effect.

(5) On March 24, 2009, the Joint Plan went effective. On that date, U.S. Bank National Association was appointed as the trustee for the Liquidation Trust (the "Trustee").

(6) On April 19, 2010, pursuant to the authority granted it in the Joint Plan and the trust agreement governing the Liquidation Trust, the Trustee commenced the above-captioned adversary by filing the Original Complaint against Wisenbaker. The Original Complaint sought to avoid and recover $ 1,665,181 as preferences or, in the alterative, as fraudulent transfers (collectively, the "Avoidance Actions"), and seeking the disallowance of Defendants' claims until the transfers underlying the Avoidance Actions were recovered.

(7) On August 27, 2010, Wisenbaker filed a motion to dismiss the Original Complaint.

(8) On September 9, 2010, the Liquidation Trust filed the First Amended Complaint.

(9) On September 23, 2010, Wisenbaker filed an amended motion to dismiss the First Amended Complaint (the "Amended Original Motion") requesting the court to dismiss the First Amended Complaint because the Liquidation Trust did not have standing to pursue the Avoidance Actions, or, in the alternative, for failure to state a claim pursuant to Rule 8(a) of the Federal Rules of Civil Procedure (the "Rules").

(10) On June 2, 2011, Judge Sonderby of this court issued the Original Memorandum Opinion addressing the Amended Original Motion. In the Original Memorandum Opinion, Judge Sonderby granted in part and denied in part the Amended Original Motion, finding that the Liquidation Trust did have standing to pursue the Avoidance Actions and that the First Amended Complaint sufficiently pled Count II for the avoidance of fraudulent transfers, but that the First Amended Complaint did not sufficiently plead Count I for the avoidance of transfers as preferences. Judge Sonderby granted the Liquidation Trust leave to amend the First Amended Complaint.

(11) On June 30, 2011, the Liquidation Trust filed the Second Amended Complaint.

(12) On July 21, 2011, Wisenbaker filed the Motion To Dismiss before the court today, asking the court to dismiss the above-captioned adversary proceeding in its entirety pursuant to a relatively recent Supreme Court's decision or, in the alternative, dismiss Count I of the Second Amended Complaint with prejudice for failure to comply with the terms of the Original Memorandum Opinion.

## DISCUSSION

The arguments presented in the Motion To Dismiss do not present an issue of first impression to the court (though the Motion To Dismiss does offer this judge, in his relatively short tenure on the bench, the first opportunity to be heard with respect to them). In fact, given the number of strategic-minded defendants who have sought to use *Stern v. Marshall*, ___ U.S. ___, 131 S. Ct. 2594 (2011) ("*Stern*") to prolong and/or obfuscate litigation, one might venture that there is no bankruptcy court today that has not had to deal with the issues considered in *Stern* and their impact on bankruptcy court authority.[2]

As the Bankruptcy Court for the Southern District of New York has stated, "[u]nfortunately, *Stern* ... has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court." *In re Ambac Financial Group Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011); *see also* Letter from Hon. Joan N. Feeney, United States Bankruptcy Judge, District of Massachusetts, President of the National Conference of Bankruptcy judges, to

---

[2] The court's legal research regarding the matter before has revealed that more than 600 cases on Westlaw, an online reporter of cases, have cited to one aspect or another of *Stern* in just over a year between the publication of *Stern* and today. This does not, of course, quantify the countless other unpublished decisions and orders addressing the same.

4

House Judiciary Committee, Subcommittee on Courts, Commercial and Administrative Law (July 20, 2012) ("Strategic-minded litigants across the country are attempting to use the Supreme Court's reasoning to circumvent the bankruptcy process entirely and take their disputes straight to the district court."). Of course, it isn't just forum shopping that may motivate a *Stern* challenge. The defendant may indeed have a legitimate concern regarding a bankruptcy court's powers. The defendant may also simply be seeking to the increase complexity or cost of the underlying litigation, especially when opposed by a litigant of limited authority, duration and/or resources such as a liquidation trust – a hardball litigation tactic that should not be encouraged by the courts. *See, e.g., Chemical Bank v. Affiliated FM Ins. Co.*, 87 Civ. 0150, 1994 WL 141951 at *14 (S.D.N.Y. April 20, 1994).[3]

The difficulty is both in distinguishing legitimate concerns regarding a bankruptcy court's authority and tactical pleading, and in being sure to not give short shrift to legitimate considerations even when a defendant's motivations are clear. The difficulty is also with *Stern* itself, which unquestionably goes beyond the question posed to it by the litigants in the matter into larger legal and policy discussions which are ultimately not germane to the Supreme Court's holding.

There is an adage of the law that "bad facts make bad law," *Haig v. Agee*, 453 U.S. 280, 319 (1981) (Brennan, J., dissenting), and the underlying history behind *Stern* constitutes one of the worst set of facts this court has seen. This too, presents a problem because, as will be discussed below, the Supreme Court made clear in *Stern* that its holding was to be limited to the facts before it. *Stern v. Marshall*, 131 S. Ct. at 2620 (stating that its holding is "narrow" and limited to the "one isolated respect" of counterclaims based on state law that are not resolved in the process of ruling on the creditor's claim).

Against this backdrop the court considers the Motion To Dismiss.

A. Motion To Dismiss Under *Stern v. Marshall*

Wisenbaker interprets *Stern* to mean that the court does not have the constitutional authority to enter final orders or the statutory authority to submit proposed findings of facts and conclusions of law with respect to Avoidance Actions. Wisenbaker argues that the court does not have the constitutional authority to enter final orders as to the Avoidance Actions as the actions only augment the bankruptcy estate and would not be resolved in the claims allowance process.

In addition the court should not, Wisenbaker asserts, do as many of the other judges in this District have done: Keep the matter and issue proposed findings and conclusion of law for the district court to ratify (or not). *See, e.g., FTI Consulting, Inc. v. Merit Mgmt. Group, LP (In re Centaur, LLC)*, 476 B.R. 535, 539 (N.D. Ill. 2012); *Canopy Fin., Inc. v. Am. Express Co. (In re Canopy Fin., Inc.)*, 464 B.R. 770, 775 (N.D. Ill. 2011); *Lancelot Investors Fund, L.P. v. Enhanced Investing Corp. (In re Lancelot Investors Fund, L.P.)*, 467 B.R. 643, 646 (Bankr. N.D. Ill. 2012) (Cox, J.); *Doctors Hosp. of Hyde Park, Inc. v. LaSalle Bank Nat'l Ass'n (In re Doctors Hosp. of Hyde Park, Inc.)*, 463 B.R. 93, 100 (Bankr. N.D. Ill. 2011) (Schmetterer, J.); *Republic Windows & Doors, LLC v. Hanson's Window & Constr., Inc. (In re*

---

[3] As a point of clarification, the court has no reason to challenge the Defendants' motivations in this matter other than the generalities set forth above. As this matter was fully briefed and argued under this judge's predecessor, the court is in no position to make such determinations in this matter. The court therefore assumes that the Defendants' motivations in this matter are legitimate.

*Republic Windows & Doors, LLC*), 460 B.R. 511, 514 (Bankr. N.D. Ill. 2011) (Cox, J). Wisenbaker argues that the court does not have the statutory authority to enter proposed findings of fact and conclusions of law on Avoidance Actions because Avoidance Actions are statutorily defined as "core," and bankruptcy courts may not submit proposed finding of fact and conclusions of law on "core" matters under a strict reading of 28 U.S.C. § 157(b) and (c). Proposed findings of fact and conclusions of law may only be entered on "non-core" matters, it asserts. 28 U.S.C. § 157(c)(1).

As a result, Wisenbaker asks the court to dismiss the Second Amended Complaint in its entirety.

1. *Stern v. Marshall*

Any analysis of the bankruptcy courts' post-*Stern* authority to hear matters must begin, out of necessity, with *Stern* itself.

*Stern* was a lengthy litigation involving well-known parties, the factual underpinnings of which being as follows: In 1994, Vickie Lynn Marshall (a/k/a Anna Nicole Smith) ("Smith") married billionaire octogenarian J. Howard Marshall II ("JHM"). *Stern v. Marshall*, 131 S. Ct. at 2601. JHM died a year later. *Id.* After JHM's death, however, a dispute arose between Smith and JHM's son by another marriage, E. Pierce Marshall ("EPM"), which gave rise to a Texas state court action by Smith against EPM for tortious interference with a gift from JHM to Smith (Smith's allegedly promised portion of JHM's trust and estate). *Id.* After Smith filed a petition for bankruptcy relief in California, EPM filed a claim for defamation in the bankruptcy case. *Id.* In response, Smith filed a counterclaim against EPM alleging the same facts as the tortious interference claim she had filed in Texas state court. *Id.*

In the federal court, the California bankruptcy court entered final orders in favor of Smith on her motion for summary judgment on Marshall's defamation claim and on her counterclaim for tortious interference. *Id.* That judgment was confirmed in the district court, which awarded her $88 million dollars. *Id.* The Texas state court, however, ruled in EPM's favor. *Id.*

Because of the conflicting federal and state court rulings, and after several rounds of reversals and remands, the Supreme Court granted *certiorari* to resolve the issue. *Id.* at 2602–03.[4] At issue before the Supreme Court was whether the bankruptcy court had jurisdiction over and authority to hear Smith's counterclaim. *Id.* at 2601. Though the bankruptcy court had found that it could enter final orders in the proceeding because the proceeding was statutorily "core" under 28 U.S.C. § 157(b)(2)(C), the higher courts held that while the proceeding was within the literal definition of "core" in title 28 (as a partial codification of the Supreme Court's ruling in *Northern Pipeline Const. Co. v. Marathon Pipeline Co.*, 458 U.S. 50 (1982)), Supreme Court precedent suggested that not all counterclaims brought by a debtor were within the constitutional definition of "core" created by and as memorialized in title 28. *Stern v. Marshall*, 131 S. Ct. at 2601.

After a total of seventeen years of state and federal court litigation, on June 23, 2011, the Supreme Court decided *Stern*. In so doing, the Supreme Court agreed with EPM and held that a

---

[4] By the time the Supreme Court considered the matter for the second time, each of the original parties, Smith and EPM, had died. Smith was replaced by her executrix, Howard K. Stern, and EPM was replaced by his executor, Elaine T. Marshall. Hence, *Stern v. Marshall*.

bankruptcy court does not have the constitutional authority to enter final orders on counterclaims when the counterclaims are based strictly on state law and are not resolved in the claim allowance process. *Id.* at 2620. The Supreme Court also held that "[t]he question presented [was] a '*narrow*' one" and that, with respect to the vesting of authority in courts whose judges do not enjoy the protections in Article III of the Constitution, "Congress, *in one isolated respect*, exceeded that limitation in the Bankruptcy Act of 1984." *Id.* at 2620 (emphasis added).

Though in holding as it did, the Supreme Court essentially rejected the Judicial Conference of the United States' own resolution of the *Northern Pipeline* constitutional concerns (as contained in the Judicial Conference's Emergency Rules of Bankruptcy Procedure and as later codified by Congress in the Bankruptcy Amendments and Federal Judgeship Act of 1984, *see, e.g., Citibank, N.A. v. Park-Kenilworth Indus., Inc.*, 109 B.R. 321, 328 (N.D. Ill. 1989)), had the Supreme Court stopped with the very limited language in its primary holding, the court doubts there would have been the controversy regarding *Stern* that exists today. *Stern* is quite literally an instance where less would have been more.

The problem arises, however, in the Supreme Court's attempt to reconcile its holding in *Stern* with its earlier holdings, including the public/private distinction in *Granfinanciera*. *Stern v. Marshall*, 131 S. Ct. at 2610–13; *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 50 (1989). The Supreme Court examined its earlier holdings at great length in explaining the reason for its holding in *Stern*. However, this discussion was not the holding itself. All of that discussion is essentially *dicta*, therefore. *Cohens v. State of Virginia*, 19 U.S. 264, 399 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision."). Issues that go beyond the facts of a case but are discussed in an opinion are *dicta*, and *dicta* is not binding. *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006).

After a long account of the path of "public rights" law, the Supreme Court in *Stern* ultimately holds that "the question is [(i)] whether the action at issue stems from the bankruptcy itself or [(ii)] would necessarily be resolved in the claims allowance process." *Stern v. Marshall*, 131 S. Ct. at 2618. If any broad rule were to be derived from *Stern*, it would be this.

It is no surprise then that courts of all levels post-*Stern* have attempted to reconcile *Stern*'s expressly limited holding with its expressly expansive *dicta*. While ordinarily the resulting case law might be ignored in favor of the actual, narrow holding of *Stern* and the Supreme Court's observation that its holding should not meaningfully change the division of labor in the current statute, *Stern v. Marshall*, 131 S. Ct. at 2620, given that Wisenbaker constructs its argument for dismissal both out of the *dicta* of *Stern* and out of several post-*Stern* cases, it is therefore worth considering several of the more notable post-*Stern* cases upon which Wisenbaker relies.

    2.    Post-*Stern* Cases of Note

        a.    *In re Blixeth*

Wisenbaker places particular emphasis and reliance upon the *Blixeth* decision by the bankruptcy court in Montana. *Blixeth v. Blixeth (In re Blixeth)*, No. 09-60452-7, 2011 WL 3274042

(Bankr. D. Mont. Aug. 1, 2011), *order amended on denial of reconsideration*, 463 B.R. 896 (Bankr. D. Mont. 2012) ("*Blixeth I*").

As in the matter at bar, *Blixeth I* pertained to an adversary proceeding, the subject of which was avoidance of allegedly preferential or fraudulent transfers. *Blixeth I*, 2011 WL 3274042 at *2. As in the matter at bar, the defendant in *Blixeth I* sought dismissal on the grounds that the bankruptcy court did not have subject matter jurisdiction and that the complaint failed to state a claim. *Id.* While the defendant's original jurisdictional argument arose out of the *Rooker–Feldman* doctrine, the bankruptcy court performed an independent examination of constitutional authority under *Stern*. *Id.* at *2, *10.

After considering the parties' arguments and the existing state of the law, the Montana bankruptcy court denied the defendant's motion to dismiss with respect to all claims but the fraudulent transfer claim. *Id.* at *12. In so doing, the bankruptcy court interpreted *Stern* to mean that a bankruptcy court's authority over a preferential transfer claims is constitutional because such claim arises from the Bankruptcy Code itself, but that a bankruptcy court's authority over a fraudulent transfer claim as a core proceeding is unconstitutional because the claim did not arise from the Bankruptcy Code. *Id.* at *11. In addition, the bankruptcy court held that because section 157 of title 28 of the United States Code does not expressly grant bankruptcy courts the statutory authority to render findings of fact and conclusions of law in core proceedings, only in non-core proceedings, the bankruptcy court "may in no case hear the [fraudulent transfer] claim." *Id.* at *12.

Wisenbaker wishes for the court to go beyond the holding of *Blixeth I* and argues for the same result as to the preferential transfer claim in addition to the fraudulent transfer claim. Neither time nor reason is on Wisenbaker's side with respect to this argument, however.

Even if *Blixeth I* were controlling on this court (which it is not), the court notes that after the filing of Wisenbaker's briefs in this matter, the procedural ruling in *Blixeth I* was overturned on reconsideration. *Blixeth v. Blixeth (In re Blixeth)*, 463 B.R. 896, 905–07 (Bankr. D. Mont. 2012) ("*Blixeth II*"). In *Blixeth II*, the bankruptcy court determined that its analysis in *Blixeth I* "was flawed." *Blixeth II*, 463 B.R. at 906. Upon further analysis, the bankruptcy court in *Blixeth II* noted that *Stern's* holding was more limited. The bankruptcy court therefore adopted the analysis of other bankruptcy courts and concluded that *Stern* does not deprive bankruptcy courts of subject matter jurisdiction or authority in matters such as the Avoidance Actions at issue here. *Id.* For this reason, the *Blixeth II* court denied the defendant's motion to dismiss as to all claims. *Id.*

The court agrees with the holding of *Blixeth II* that bankruptcy courts may hear preferential transfer and the fraudulent transfer claims and that the bankruptcy courts have the constitutional authority to enter final orders on matters such as the Avoidance Actions. Nothing in the limited holding of *Stern* states otherwise. Because *Blixeth II* reverses the position in *Blixeth I* and because *Blixeth I* is, regardless, not binding on this court, the court declines to consider Wisenbaker's *Blixeth I* arguments further.

        b.     *In re Ortiz*

*Ortiz*, a fairly recent Seventh Circuit case is more helpful to Wisenbaker's position than is *Blixeth I*, in no small part due to the fact that it is controlling law in this jurisdiction. *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906 (7th Cir. 2011).

In *Ortiz*, a group of unrelated debtors joined together to file a class action complaint in the bankruptcy court which was presiding over their bankruptcy cases. *Id.* at 908–09. A second group of debtors filed a class action before the Wisconsin state court, but that matter was removed by the defendant to the bankruptcy court. *Id.*; *see* 28 U.S.C. § 1452. The factual basis of the lawsuit was the defendant's, a health care provider, public disclosure of confidential medical information regarding each debtor in each debtor's bankruptcy cases. *Ortiz*, 665 F.3d at 908–09. The debtors sought damages under a Wisconsin state law that grants a remedy to individuals who incur damages as a result of the disclosure of individual's health care records without the individual's permission. *Id.*

After removal of the state court litigation and in response to the defendant's attempt to withdraw the reference to the district court, the two groups of debtors sought to have the matter heard in the state court (one under a theory of abstention, the other under a request for remand). *Id.* at 909. Both the bankruptcy court and the district court denied the various motions. *Id.* at 909–10. The bankruptcy court then granted the defendant's motion to dismiss the complaint because the plaintiffs had failed to prove damages, a necessity to prevail under the Wisconsin state statute. *Id.* at 910. Both parties filed motions for certification of direct appeal to the Seventh Circuit Court of Appeals, which the bankruptcy court granted and the Court of Appeals authorized. *Id.*

Oral argument was held in early 2011 and, at the time, all parties agreed that the bankruptcy court's order dismissing the complaint was a final order. *Id.* A few months later, however, the Supreme Court decided *Stern* and the court of appeals as a result *sua sponte* examined whether the bankruptcy court had authority to issue a final order on the motion to dismiss. *Id.* at 910–11.

Instead, it found that the plaintiffs' claim, like the debtor's claim in *Stern*, involved two private parties in a dispute based solely on state law that did not invoke any federal statutory scheme. *Id.* at 914. In the words of the Seventh Circuit, "[t]he debtors' claims are simply ordinary state-law claims." *Id.* It concluded, therefore, that the bankruptcy court did not have constitutional authority to enter final orders in the subject litigation and that, as a result, the court of appeals had no authority to hear an appeal resulting from such orders, final or otherwise. *Id.* at 915.

It should be clear that, as with *Stern*, the *Ortiz* decision is sharply limited to its facts. The Seventh Circuit in *Ortiz* drew multiple parallels between the facts of *Stern* and the facts of *Ortiz* that do not exist here. It observed that as in *Stern*, the dispute in *Ortiz* involved "the liability of one individual to another... ." *Id.* at 914. The *Ortiz* court dismissed any relationship between the proofs of claim in the matter and the claims in the subject litigation. *Id.* As a result, the Seventh Circuit found that *Stern* compelled it to find that the Article I court had no constitutional authority with respect to the issue before it. *Id.*

On its facts alone, the *Ortiz* decision does not relate to the matter before the court today. Unlike in *Ortiz*, the matters here are not solely state law claims involving the disputes between one individual and another. As recognized in *Ortiz*, *Stern* made clear that matters that "in effect increase [a] creditor's proportionate share of the estate" are essential to any ruling on that creditor's claims against the estate. *Stern v. Marshall*, 131 S. Ct. at 2616; *Ortiz*, 665 F.3d at 913. This is not, as Wisenbaker argues, a test over whether the action augments the estate, which has been expressly rejected as a sole basis for authority in *Ortiz*. *Ortiz*, 665 F.3d at 914. Wisenbaker is correct that such at test would completely undo the holding of *Stern* and *Ortiz*. The question posed both by *Stern* and

*Ortiz* is different; whether the action is to rectify one creditor's actions, which have permitted it disproportionate recovery. *Stern v. Marshall*, 131 S. Ct. at 2616; *Ortiz*, 665 F.3d at 913.[5]

To be clear, *Ortiz* does contain troubling language generalizing bankruptcy courts' authority. Some of the reasoning in *Ortiz*, if read out of context with the facts before the Seventh Circuit in the matter, could be deemed to deny bankruptcy courts the authority to rule on any matter other than purely administrative matters arising in a debtor's bankruptcy case. Were that indeed the holding of *Ortiz*, this court would be bound to follow it. *Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir.), *cert. denied*, 510 U.S. 899 (1993) ("Ours is a hierarchical judiciary, and judges of inferior courts must carry out decisions they believe mistaken. A district judge who thinks new evidence or better argument 'refutes' one of our decisions should report his conclusions while applying the existing law of the circuit.").

That is not, however, the holding of *Ortiz*, as discussed above. As with *Stern*, the broad discussion in *Ortiz* was beyond the question before it, and any such discussion is therefore *dicta* and nonprecedential. *Cent. Virginia Cmty. Coll.*, 546 U.S. at 363; *Cohens*, 19 U.S. at 399.

3.  Application to the Matter at Bar

The issue presented in the matter now before the court is whether a bankruptcy court has the constitutional authority to enter a final order on the avoidance of preferences under section 547 of the Bankruptcy Code and fraudulent transfers under sections 544 and 548 of the Bankruptcy Code.

As discussed above and below, this is not the "isolated respect" that the Supreme Court found to lack constitutional authority in *Stern*. These proceedings do not involve the resolution of a counterclaim. Nor are these proceedings, like the proceedings in *Stern* and *Ortiz*, steeped in state law. In fact, these proceedings do not share anything in common with the proceedings that *Stern* and *Ortiz* held was unconstitutional other than that they are all adversary proceedings in a bankruptcy case. Such a basis is not sufficient to expand an explicitly narrow holding.

The court will, nonetheless, consider its authority as to each of the causes of action in turn.[6]

---

[5]   Of course, as discussed above, the question regarding the effect of the action is only one party of a disjunctive two-part test set forth in the *Stern*. As discussed below, while the court believes that this part is satisfied in the matter before the court, the court finds that the issue before the court "stems from the bankruptcy itself," an independent source of authority under *Stern*. *Stern v. Marshall*, 131 S.Ct. at 2618.

[6]   The court also notes that the United States District Court for the Northern District of Illinois has not, in response to *Stern*, *Ortiz* or otherwise, amended IOP 15(a). As a result, this court is still charged by the district court with hearing "any and all cases under Title 11 U.S.C. and any and all proceedings arising under Title 11 U.S.C. or arising in or related to any case under Title 11 U.S.C. are referred to the bankruptcy judges of this District." This court must follow the mandate of the district court in the same way that it must adhere to the precedent of the court of appeals. For that reason alone, the Motion To Dismiss is not well taken. A federal court must always independently consider whether it has jurisdiction in a matter, *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 593 (2004), however, and the court sees no reason that such maxim would not also apply to authority. For that reason, the court will consider the arguments before it.

a.     Count I – The Preference Action

Wisenbaker argues that a bankruptcy court is not authorized to resolve a preference claim unless the preference claim is inextricably linked to the resolution of a creditor's proof of claim. *See Stern*, 131 S. Ct. at 2617. Wisenbaker argues that they did not file a claim, but in fact admits that they did in their own pleadings. Footnote 2 of their Motion To Dismiss states that Wisenbaker has filed proofs of claim in five of the cases of the Wisenbaker Debtors. As Wisenbaker did file proofs of claim against certain of the Debtors, it is within the court's authority to consider the Second Amended Complaint in resolving the liability of those claims. *In re Olde Prairie Block Owner, LLC*, 457 B.R. 692, 698–99 (Bankr. N.D. Ill. 2011) (Schmetterer, J.). Wisenbaker may not withdraw those claims merely to defeat this court's authority. *Bachrach Clothing, Inc. v. Edgar H. Bachrach (In re Bachrach Clothing, Inc.)*, No. 08-00726 (Bankr. N.D. Ill. Oct. 11, 2012) (Hollis, J.); *EXDS, Inc. v. RK Electric, Inc. (In re EXDS, Inc.)*, 301 B.R. 436, 439–41 (Bankr. D. Del. 2003) (concluding that "a creditor [cannot], for strategic reasons, reverse the result it triggered by filing a proof of claim by later withdrawing the claim").

Wisenbaker may, of course, defend against such actions by raising arguments regarding the connection between the alleged transferor, Kimball Hill Homes Texas, Inc. ("KHH Texas"), and the Wisenbaker Debtors. It may well be that the Plaintiff is unable to make the appropriate connections. However, for the purposes of determining this court's authority under *Stern*, the court notes that the Joint Plan consolidated the distribution and interests of all the Debtors, including the interests and claims of the Wisenbaker Debtors, into *In re Kimball Hill, Inc.*, the main bankruptcy underlying this adversary proceeding. It also eliminated intercompany claims. Thus while the Joint Plan did not expressly state that the Debtors' cases were substantively consolidated, it nonetheless had that effect. *World Access, Inc. v. World Access, Inc. (In re World Access, Inc.)*, 301 B.R. 217, 272 (Bankr. N.D. Ill. 2003) (Sonderby, J.) (when bankruptcy cases are substantively consolidated, "intercompany claims are eliminated and wealth is redistributed among the creditors of the various entities.").

The result of that consolidation appears to be the mergers of all the claims against and claims by the Debtors into the Liquidating Trust. While the court does not determine whether there has in fact been a substantive consolidation for all purposes today and the parties are free to make whatever appropriate arguments there are with respect to this and the resolution of the Second Amended Complaint, for the purposes of determining this court's authority, this fact is sufficient for the Motion To Dismiss to fail on this point – both with respect to Count I and with respect to Count II.

Regardless, Wisenbaker's reliance on this fact, even if it were true, is misplaced. Wisenbaker overlooks the fact that *Stern* applies two disjunctive criteria to determine constitutional authority. Under *Stern*, this court may enter final orders in a proceeding that stems from the bankruptcy itself *regardless of whether a claim was filed*. *Stern v. Marshall*, 131 S. Ct. at 2618.

Count I of the Second Amended Complaint is a preference claim under section 547 of the Bankruptcy Code, which gives the trustee the right to avoid certain payments made on the eve of bankruptcy. *See* 11 U.S.C. § 547(a). Preference claims only exist as a matter of bankruptcy law. The right of recovery under section 547 is both unique and vital to bankruptcy because it serves one of bankruptcy's fundamental goals, the equal distribution of estate property to creditors. *In re Smith*,

966 F.2d 1527, 1535 (7th Cir. 1992); H.R. Rep. No. 595, 95th Cong., 2d Sess. 177–78 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6137–39.

Therefore, the test set forth by the Supreme Court in *Stern*, that the bankruptcy court may enter final orders on the preference claim because the proceeding "stems from the bankruptcy itself," *Stern v. Marshall*, 131 S. Ct. at 2618, is satisfied.

This holding is borne out by every published opinion[7] in which a *Stern* challenge to a bankruptcy court's authority to enter final orders in a preference avoidance action has been raised. *See, e.g., First Choice Drywall Inc. v. Presbitero (In re First Choice Drywall, Inc.)*, No. 12 A 00625, 2012 WL 4471570 (Bankr. N.D. Ill. Sept. 25, 2012) (Schmetterer, J.) (bankruptcy court has the power to determine preference actions post *Stern*); *Meltzer Plumbing Sys., Inc. v. PG Design/Build, Inc. (In re Smeltzer Plumbing Sys., Inc.)*, No. 08-A-96001, 2011 WL 6176213 (Bankr. N.D. Ill. Dec. 12, 2011) (Barbosa, J.) (same); *see also, e.g., Nanodynamics, Inc. v. Rothstein (In re Nanodynamics, Inc.)*, 474 B.R. 422, 429 (Bankr. W.D.N.Y. 2012) (same); *Appalachian Fuels, LLC v. Energy Coal Resources, Inc. (In re Appalachian Fuels, LLC)*, 472 B.R. 731, 744 (E.D. Ky. 2012) (same); *In re Am. Hous. Found.*, 469 B.R. 257, 265 (Bankr. N.D. Tex. 2012) (same); *DBSI, Inc.*, 467 B.R. at 773 (same); *Apex Long Term Acute Care--Katy, L.P. v. Freedom Medical, Inc. (In re Apex Long Term Acute Care--Katy, L.P.)*, 465 B.R. 452, 463 (Bankr. S.D. Tex. 2011) (same); *USDigital, Inc. v. Huston (In re USDigital, Inc.)*, 461 B.R. 276, 285 (Bankr. D. Del. 2011) (same).

For this reason the court finds that there is no basis under *Stern* or *Ortiz* to dismiss Count I specifically, or the adversary proceeding generally.

    b.   Count II – The Fraudulent Transfer Action

Wisenbaker also argues that the court "lacks jurisdiction"[8] over the fraudulent transfer claim because fraudulent transfer claims resemble state law contract claims. *See Granfinanciera*, 492 U.S. at 54–56. Fraudulent transfer claims do not, of course, resemble state law contract claims. If anything, they resemble state law fraudulent transfer claims. State law fraudulent transfer claims, however, have bankruptcy law as their source.

Count II of the Second Amended Complaint is a fraudulent transfer claim under sections 544 and 548 of the Bankruptcy Code. The Bankruptcy Code grants a bankruptcy trustee the power to avoid transfers as fraudulent under both federal and state law. 11 U.S.C. §§ 544 & 548. Section 544 allows the trustee the power to avoid any transfer that any creditor would have the right to avoid under state law. It serves essentially the same purpose section 548, which sets forth elements that the trustee must prove concerning the insolvency of the debtor and the transfer so that the trustee may bring the transfer back and distribute the property to all creditors in accordance with the proper priorities.

---

[7]  As of the date of issuance of this Memorandum Decision.

[8]  The Motion To Dismiss switches back and forth between arguments that go to subject matter jurisdiction and those that go to constitutional authority. For that reason, the court considers here both its constitutional authority to enter final orders regarding the Liquidation Trust's claims and whether the court has subject matter jurisdiction under 28 U.S.C. § 157.

While the trustee's power to avoid transfers of the debtor as fraudulent may depend on either federal or state law, state fraudulent transfer law is actually steeped in bankruptcy law. Claims for recovery or avoidance of fraudulent transfers have been a part of insolvency since 1570. An Act Against Fraudulent Deeds, Gifts, Alienations, etc., 13 Eliz. 1, ch. 5 (1570) (Eng.). That right was codified in the United States in 1918 by the Uniform Fraudulent Conveyance Act (UFCA), which sought to resolve the differences within fraudulent conveyance law. *See* UFCA, Historical Notes, 7A U.L.A. 161 (1978). Thereafter, section 67d of the Bankruptcy Act of 1938 was conformed to the UFCA so as resolve any differences. Chandler Act, ch. 575, § 67d, 52 Stat. 840, 877–78 (1938) (*repealed* 1978). The Bankruptcy Reform Act of 1978 codified these laws as part of the Bankruptcy Code, creating both sections 544 and 548. Revisions were made at the time to reflect the courts' experience with the law as written by the UFCA. Pub.L. No. 95-598, 92 Stat. 2549 (*codified as amended at* 11 U.S.C. §§ 101-1330 (1988 & Supp. II 1990)). The Uniform Fraudulent Transfer Act (UFTA), which replaced the UFCA in 1984 and which most states have adopted for their fraudulent transfer claims, now conforms to fraudulent conveyance law as set forth by Congress in the Bankruptcy Code. *See* UFTA, 7A U.L.A. 639–42 (1985).

In point of fact, therefore, the resemblance between bankruptcy fraudulent transfer claims and state fraudulent transfer claims is because the state claims have as their source, and are modeled after, the bankruptcy claims.

It follows that fraudulent transfer claims are at the core of the federal bankruptcy power. The Supreme Court has in fact recognized that actions to avoid fraudulent transfers are integral to the debtor-creditor relationship. *See Cent. Va. Comty. College*, 546 U.S. at 369–70). "The restructuring of debtor-creditor relations . . . is at the core of the *federal bankruptcy power*." *Northern Pipeline*, 458 U.S. at 71 (emphasis added).

The number of courts who have rejected a *Stern* challenge to the bankruptcy court's authority to enter final orders on a fraudulent transfer claim is, to the say the least, quite large. *See, e.g., In re AFY, Inc.*, 461 B.R. 541, 547–48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *Madoff v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 484 (S.D.N.Y. 2012); *Bachrach Clothing, Inc.*, No. 08-00726 (Bankr. N.D. Ill. Oct. 11, 2012); *Vista Bella, Inc. v. RBL, L.L.C. (In re Vista Bella, Inc.)*, No. 12-00060-MAM, 2012 WL 3778956 (Bankr. S.D. Ala. Aug. 30, 2012); *Nanodynamics, Inc.*, 474 B.R. at 429; *Agriprocessors, Inc. v. The Right Place, Inc. (In re Agriprocessors, Inc.)*, No. 10-9123, 2012 WL 2872054 (Bankr. N.D. Iowa July 12, 2012); *Miles v. Blue Star Residential, LLC (In re Miles)*, 477 B.R. 266 (Bankr. N.D. Ga. 2012); *Appalachian Fuels, LLC*, 472 B.R. at 741; *DBSI, Inc.*, 467 B.R. at 773; *MPS Computer, LLC v. Granite Financial Solutions, Inc. (In re MPC Computers, LLC)*, 465 B.R. 384, 388 (Bankr. D. Del. 2012); *Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854, 863 (D. Minn. 2011); *Custom Contractors, LLC v. Unites States (In re Custom Contractors, LLC)*, 462 B.R. 901, 908 (Bankr. S.D. Fla. 2011); *Universal Mktg., Inc. v. Eby-Brown, Inc. (In re Universal Mktg., Inc.)*, 459 B.R. 573, 576 (Bankr. E.D. Pa. 2011); *Am. Bus. Fin. Servs., Inc. v. Greenwich Capital Fin. Products, Inc. (In re Am. Bus. Fin. Servs., Inc.)*, 457 B.R. 314, 319 (Bankr. D. Del. 2011).

As have the preceding courts, this court respects the direction of the Supreme Court that *Stern*'s holding is "narrow" and "does not change all that much," especially "the division of labor in the current [section 157]." *See Stern v. Marshall*, 131 S. Ct. at 2620. As the right to avoid a fraudulent

transfer is steeped in bankruptcy law, the bankruptcy court's entering final orders on the proceeding does not chip away at the authority that the Constitution vested to the Article III courts. *See id.*

To hold otherwise would be "to create a mountain out of a mole hill." *USDigital, Inc.*, 461 B.R. at 292. For this reason the court finds that there is no basis under *Stern* or *Ortiz* to dismiss either Count II specifically, or the adversary proceeding generally.

B.  <u>Motion To Dismiss Under Rule 8(a)(2) and Rule 41(b)</u>

Because the court has declined to dismiss the adversary proceeding under Wisenbaker's *Stern* and *Ortiz* arguments, the court must consider Wisenbaker's alternative argument, that Count I of the Second Amended Complaint should be dismissed with prejudice under Rules 8(a) and 41(b).[9]

In this regard, the Motion To Dismiss is Wisenbaker's second motion to dismiss under Rule 8(a)(2). In the Original Memorandum Opinion, Judge Sonderby denied in part and granted in part Wisenbaker's motion to dismiss the First Amended Complaint for failure to state a claim. Judge Sonderby charged the Liquidation Trust in the Original Memorandum Opinion with providing more facts regarding the antecedent debts owed by the Debtors with respect to the allegedly preferential transfers.

Wisenbaker argues in the Motion To Dismiss that the Liquidation Trust did not make any factual enhancement in the Second Amended Complaint and that, as a result, Wisenbaker is unable to analyze which goods and services Wisenbaker rendered to which of the Debtor entities. The Liquidation Trust has, in response, provided a redline of the Second Amended Complaint against the First Amended Complaint, showing what changes were in fact made. Even a cursory review of that redline reveals that Second Amended Complaint has in fact been responsive to Judge Sonderby's missive.

The Second Amended Complaint alleges that KHH Texas issued work orders to Wisenbaker for *all* of the goods and services that the Defendants provided and that Wisenbaker accepted the work orders from KHH Texas, performed the work under the work orders, and, in turn, issued invoices for the work performed under the work orders. Such invoices may evidence an obligation arising out of the work performed by Wisenbaker. Such work, in turn, appears to have been performed in response to earlier work. Details of the payment transfers are given and as payment followed, it together follows in turn that such payment may have been on account of an antecedent debt. 11 U.S.C. § 547(b).

Wisenbaker further argues that it cannot determine which Debtor is asserting rights against it. This, in the court's opinion, is not outcome determinative at this stage. As discussed above, it is clear that, pursuant to the Joint Plan, the Trustee has the right to assert such claims on behalf of the Liquidating Trust, which is in turn the successor to the rights and choses in action of all of the

---

[9]  Similarly, given the court's ruling with respect to Wisenbaker's *Stern* arguments, it need not consider whether it may issue proposed findings of fact and conclusions of law. Nonetheless, the court agrees with Judge Wedoff's thorough and insightful analysis in this regard. *Gecker v. Flynn (In re Emerald Casino, Inc.)*, 459 B.R. 298 (Bankr. N.D. Ill. 2011) (Wedoff, J.). For the reasons set forth in *Emerald Casino*, had this court found that it lacks authority to enter final judgment on the Second Amended Complaint, it would unquestionably be authorized to enter such proposed findings of fact and conclusions of law.

Debtors. While it may be that the Trustee's action fails at some later stage as a result its inability to correctly differentiate between Debtors, the court believes that the notice pleading standards of Rule 8(a) have been met. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("[U]nder federal notice pleading standards, the complaint need only provide a short and plain statement of the claim that shows, through its allegations, that recovery is plausible rather than merely speculative."); *Ahto v. Joshi (In re Joshi)*, No. 07 A 995, 2008 WL 1804103 at *4 (Bankr. N.D. Ill. Apr. 17, 2008) (Hollis, J.) ("Under federal notice pleading standards, '[m]atching facts against legal elements comes later.'") (citing *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994)).

The court finds that the allegations set forth in the Second Amended Complaint plead with sufficient particularity which transfers are plausible preferential transfers. Accordingly, dismissal of Count I for failure to allege a plausible preference action is not warranted.

## CONCLUSION

Because the court declines to extend the rulings of *Stern* and *Ortiz* beyond their expressly limited facts, and all the aforementioned reasons discussed *infra*, the court concludes that the Motion To Dismiss can and should be denied.

A separate order will be issued, concurrent with this Memorandum Decision, denying the Motion To Dismiss.

Dated: October 12, 2012

Timothy A. Barnes
United States Bankruptcy Judge